**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **HUMILITY OF MARY HEALTH PARTNERS d/b/a ST. ELIZABETH'S HOSPITAL** | : | **Case No. 09-CV-0453** |
| **Petitioner,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| **NATIONAL LABOR RELATIONS BOARD, REGION 8,** *et al.* | : | **OPINION & ORDER** |
| **Respondents.** | : | |

Before the Court is a Motion to Dismiss (Doc. 7) the Petition for a Writ of Mandamus (Doc. 1), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), filed by the Respondents, National Labor Relations Board, Region 8, its Regional Director, and its Regional Attorney (collectively, "the Respondents"). The Petitioner, Humility of Mary Health Partners d/b/a St. Elizabeth's Hospital ("St. Elizabeth's"), has filed an opposition brief (Doc. 9), the Respondents filed a reply (Doc. 12), and St. Elizabeth's, having leave from the Court, filed a sur-reply. (Doc. 13-1). Accordingly, this matter is ripe for adjudication. For the reasons articulated below, the Respondents' Motion to Dismiss (Doc. 7) is **GRANTED**.

I.       **BACKGROUND**

This case arises out of the fact that the Sheet Metal Workers' Local 33 ("Local 33") placed an inflatable rat and a banner stating "SHAME ON JANET THOMPSON" at the entrance to St. Elizabeth's Hospital. St. Elizabeth's allegations are as follows. Janet Thompson is the Regional Director of Revenue Cycle Integrity for St. Elizabeth's. (Doc. 1 at 3). In 2007, Thompson inherited her husband's business, Thompson Heating and Cooling Co. ("THCC"). *Id.* THCC has 15 non-

union employees and has been in business for almost 50 years.  Local 33 wanted to unionize THCC's workers and sought voluntary consent from Thompson in order to do so.  Deciding that she would prefer to have a secret ballot by her employees to decide whether to unionize, she denied Local 33's request to consent.  Following this decision, Local 33 placed the rat and banner at St. Elizabeth's entrance.  *Id.*

On February 2, 2009, St. Elizabeth's filed an unfair labor practice complaint against Local 33 with the Respondents, National Labor Relations Board, Region 8, asserting that the use of the rat and banner violated National Labor Relations Act (NLRA) Sections 8(b)(4)(i)(B) and (ii)(B).[1] *Id.*  NLRB Field Attorney Stephen Wilson informed St. Elizabeth's on February 11, 2009, that its charge was being referred to the Board's Division of Advice.  (Doc. 1 at 4).  On February 25, 2009, Wilson notified St. Elizabeth's that the Division of Advice viewed the case "as having arguable merit but it should be held in abeyance (with no further action taken) until the Board decides the lead cases before it."  (Doc. 1-5).  The Regional Office had issued two Memoranda, (Doc. 1-3 & 1-4), which explained that the office would hold in abeyance any charges of union "bannering of neutral persons and the display of inflatable rats."  The reason for this action was that several similar "rat-and-banner" cases were currently pending before the Board and in several district courts, and the

---

[1](b) "It shall be an unfair labor practice for a labor organization or its agents . . . (4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is . . . (B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees. . ." 29 U.S.C. §158.

-2-

Regional office wanted to await the outcome of those lead cases before initiating any new ones.[2]
*Id.*  In response, St. Elizabeth's initiated this case by filing its Petition (Doc. 1) for a Writ of
Mandamus to compel the Respondents, pursuant to NLRA Section 10(*l*), to seek an injunction to
stop Local 33's rat-and-banner activity.

## II.  LAW AND ANALYSIS

### A.  LEGAL STANDARD

When a party files a motion to dismiss under both Rules 12(b)(1) and (6), the Court normally
is bound to consider the 12(b)(1) motion first, because, if granted, the 12(b)(6) motion would be
mooted by the determination that the Court lacks subject matter jurisdiction.  *Moir v. Greater
Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Bell v. Hood*, 327
U.S. 678, 682 (1946)) (explaining motion to dismiss for failure to state a claim can only be decided
after subject matter jurisdiction has been established).  In this case, however, the two issues merge.

St. Elizabeth's asserts that the Court has jurisdiction pursuant to 28 U.S.C. § 1361, which
provides that "district courts shall have original jurisdiction of any action in the nature of mandamus
to compel an officer or employee of the United States or any agency thereof to perform a duty owed
to the plaintiff."  "The existence of jurisdiction under section 1361 is inextricably bound with the
merits of whether a writ of mandamus should issue."  *Maczko v. Joyce*, 814 F.2d 308, 310 (6th Cir.
1987) (citing *see Vishnevsky v. U.S.*, 581 F.2d 1249, 1253 n.4 (7th Cir. 1978)).  "In mandamus
actions, the usually separate questions of jurisdiction and failure-to-state-a-claim merge.  [That is

---

[2]St. Elizabeth's notes that the National Labor Relations Board currently has only 2 out of
5 seats filled, and has apparently not issued many opinions since it was reduced to two members
in 2007.  (Doc. 1 at 5).  Pertinently, St. Elizabeth's claims that the lead rat-and-banner case has
been outstanding since 2004.  *Id.*

because] [t]here can be no mandamus jurisdiction if no 'duty' exists on the part of the defendants." *Davis Associates, Inc. v. Secretary, Dep't of Housing & Urban Development*, 498 F.2d 385, 388 (1st Cir. 1974). Thus, the Court must undertake the unusual task of simultaneously reaching a determination as to both of the Respondents' attacks on St. Elizabeth's petition.

With respect to Rule 12(b)(6) specifically, the Court may dismiss all or part of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) is directed solely at the complaint itself. *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983) (citing *Sims v. Mercy Hospital of Monroe*, 451 F.2d 171, 173 (6th Cir. 1971)). When evaluating a complaint in light of a motion to dismiss, the Court must accept all of the plaintiff's well-pled allegations as true and resolve every doubt in the plaintiff's favor. *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)).

That said, a claim will be dismissed when it does not "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory. . . ." *Twombly*, 127 S. Ct. at 1969 (internal citations and quotations omitted, emphasis in original). A court, moreover, is not entitled to accept "legal conclusions" or "conclusory allegations" as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *United States v. Salti*, No. 07-4487, 2009 U.S. App. LEXIS 19093, at *29 n.11 (6th Cir. August 25, 2009) (citing *Iqbal*, 129 S. Ct. at 1951).

Whereas, prior to the Supreme Court's decision in *Iqbal*, a district court could disregard only those "allegations . . . sufficiently fantastic to defy reality as we know it," the Supreme Court recently made clear that the bar is meaningfully higher. *Courie v. Alcoa Wheel & Forged Prods.*, No. 07-4440, 2009 U.S. App. LEXIS 18561, at *4-5 (6th Cir. August 18, 2009) (citing *Iqbal*, 129

-4-

S. Ct. at 1949; *Iqbal*, 129 S. Ct. at 1959 (Souter, J., dissenting)).  To survive a motion to dismiss, the complaint must state "a plausible claim for relief."  *Iqbal*, 129 S. Ct. at 1950 (emphasis added) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  The requisite facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).

### B.   DISCUSSION

In seeking a writ of mandamus, St. Elizabeth's claims that NLRA Section 10(*l*) creates a duty which the Respondents are failing to perform by failing to address Local 33's rat-and-banner activity at St. Elizabeth's.  (Doc. 1 at 6).  Under Section 10(*l*), when a charge alleges §§ 8(b)(4)(i)(B) or (ii)(B) violations and, after an investigation, "the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he **shall**, on behalf of the Board, petition any district court of the United States . . . for appropriate injunctive relief. . ." 29 U.S.C. §160(*l*) (emphasis added).  St. Elizabeth's claims that, because the regional office conceded that St. Elizabeth's charge had "arguable merit," it necessarily concluded that there was reasonable cause to believe the charge is true and that a complaint should issue, thereby requiring the Respondents to seek an injunction in federal district court.  (Doc. 9 at 3).  St. Elizabeth's argues that, under these circumstances, the Court should issue a writ of mandamus directing the Respondents to perform the duty owed – ordering them to seek an injunction.

The Respondents' counter that, while they may have said that St. Elizabeth's claim appeared to have "arguable merit," that statement did not constitute a finding of reasonable cause that the charge is true and that a complaint should issue. (Doc. 8 at 14-15).  The Respondents assert that the

nondiscretionary aspect of Section 10(*l*), requiring them to seek an injunction, has not been triggered.  The Respondents claim that they have not decided yet whether there is reasonable cause to believe that St. Elizabeth's charge is true *and* have not yet decided that a complaint should issue. They argue that the decision to seek an injunction remains entirely <u>discretionary</u> at this point, rendering the mandamus statute, 28 U.S.C. § 1361, inapplicable and, consequently, depriving the Court of jurisdiction to issue a writ of mandamus at this time.[3]

### 1.      Mandamus Jurisdictional Standard

As a threshold matter, this Court must determine the standard it must employ to assess its jurisdiction under the mandamus statute, 28 U.S.C. § 1361.  As discussed above, when courts evaluate a petition for a writ of mandamus, the usually separate issues of jurisdiction and the presence of a properly stated claim are merged.  The proper standard for evaluating this merged issue is a question on which the parties strongly disagree.  The Respondents argue that mandamus jurisdiction only exists if they owe St. Elizabeth's a "clear nondiscretionary duty" and St. Elizabeth's has exhausted all other avenues for relief.  (Doc. 8 at 6).  St. Elizabeth's counters that the proper standard is not whether there is a "clear nondiscretionary duty," but rather, whether the petitioner has asserted a "colorable" claim.  (Doc. 9 at 1-2).

This "colorable" claim contention is somewhat unusual, and St. Elizabeth's supports it with only a single case: *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478 (6th Cir. 2009).  In *Tackett*, the Sixth Circuit considered whether the violation of a collective bargaining agreement was a

---

[3]The Respondents also note that St. Elizabeth's is not without some remedy against Local 33 because parties who have been injured due to violations of the applicable NLRA sections have a cause of action for damages.  *See* 29 U.S.C. § 187. (Plaintiff "shall recover the damages by him sustained and the cost of the suit.").

jurisdictional prerequisite to a claim under § 301 of the Labor Management Relations Act ("LMRA"), or merely an essential ingredient of a successful § 301 claim.  *Id.* at 483.  In reversing the district court's order dismissing the § 301 claim on jurisdictional grounds, the Sixth Circuit held that "[i]f a violation is not a prerequisite to jurisdiction, then, to survive a Rule 12(b)(1) motion, the Plaintiffs need not show a violation but merely that their violation claim is 'colorable.'" *Id.* at 484.  Premised on this finding, St. Elizabeth's argues that mandamus jurisdiction is proper under § 1361 so long as a petitioner can assert a "colorable" claim that a duty has been violated. (Doc. 9 at 1-3).

*Tackett*, however, did not consider the jurisdictional requirements under § 1361, or under any mandamus statute; *Tackett* considered an entirely different statutory scheme.  The Sixth Circuit did not expressly extend its holding in *Tackett* to cases filed under § 1361, and did not purport to overrule the substantial body of case law addressing the scope of a district court's jurisdiction under that statute.  Indeed, the panel in *Tackett* had no authority to overrule established United States Supreme Court precedent on mandamus jurisdiction and could not even revise Sixth Circuit law on the issue in the absence of *en banc* consideration.  Rather than assume that the *Tackett* Court intended an outcome it did not express and which it appears to have had no authority to express, this Court looks to well-established precedent regarding the scope of its mandamus jurisdiction and concludes that it may only issue a writ of mandamus if the petitioner "has exhausted all other avenues of relief and only if the defendant owes him a <u>clear nondiscretionary duty</u>."[4]  *Heckler v. Ringer*, 466 U.S. 602, 617 (U.S. 1984) (citation omitted; emphasis added); *BP Care, Inc. v.*

---

[4]While the cases the Respondents cite in support of the "nondiscretionary duty" standard are not NLRA cases, they do expressly address mandamus jurisdiction, the very jurisdictional hurdle St. Elizabeth's must satisfy.

*Thompson*, 398 F.3d 503, 515 (6th Cir. 2005); *Short v. Murphy*, 512 F.2d 374, 377 (6th Cir. 1975) ("If the alleged duty is discretionary or directory, the duty is not 'owed.'").

## 2.    NLRA Section 10(*l*)

Having found that St. Elizabeth's must show that the Respondents owe a clear, nondiscretionary duty to it as a prerequisite to the assertion of a valid claim in this Court, the Court must determine whether the duty purportedly owed by the Respondents under NLRA Section 10(*l*) is (1) nondiscretionary and (2) clear.[5]  If so, the Court must then determine (3) what is required to trigger the Section 10(*l*) duty and (4) whether that duty has, in fact, been triggered.  Finally, the Court must address St. Elizabeth's argument that, even within the Respondents' own framework – that no duty is owed because the Respondents decided that no complaint should be issued at this time – the Respondents abused their discretion and that abuse may be reviewed by this Court.

### a.    Whether the Duty is Nondiscretionary

The Respondents argue that they have discretionary, "prosecutorial" authority over the initiation, investigation, and prosecution of NLRA complaints, and therefore, owe no clear, nondiscretionary duty to St. Elizabeth's to seek an injunction.  (Doc. 8 at 10).  In support of this contention, the Respondents cite NLRA Section 3(d), which states that the General Counsel "shall have final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints under section 10, and in respect of the prosecution of such complaints. . ." 29 U.S.C. § 153(d).  Indeed, the Supreme Court has cited Section 3(d) when describing the General Counsel's role as a prosecutorial one.  *NLRB v. UFCW, Local 23*, 484 U.S. 112, 124 (1987).  The Respondents

---

[5]A petitioner must also have "exhausted all other avenues of relief." *Heckler*, 466 U.S. at 617; *BP Care*, 398 F.3d at 515.  The Respondents do not assert in their current motion that St. Elizabeth's failed to exhaust other avenues of relief available to it.  The Court does not, accordingly, address the issue at this time.

analogize this prosecutorial role of the Board's General Counsel to an U.S. attorney, with whose discretion over criminal prosecutions the courts may not interfere. *See Peek v. Mitchell*, 419 F.2d 575, 577 (6th Cir. 1970). They argue that the General Counsel has "unreviewable discretion to refuse to institute an unfair labor practice complaint." *Jackman v. NLRB*, 784 F.2d 759, 763 (6th Cir. 1986) (citing *Vaca v. Sipes*, 386 U.S. 171, 182 (1967)).

St. Elizabeth's counters that the role of the Respondents' General Counsel is *not* analogous to a criminal prosecutor, citing *UFCW, Local 23* for the propositions that analogizing "the role of the General Counsel in an unfair labor practice setting to other contexts, specifically to a criminal prosecution. . . [is] of little aid" and that "the comparison between the General Counsel and a criminal prosecutor is 'far from perfect.'" 484 U.S. at 126 n.21. Next, St. Elizabeth's highlights a critical statutory distinction between other NLRA provisions, such as Section 10(j), and the operative section in this case, Section 10(*l*). (Doc. 9 at 4). As explained by the Ninth Circuit,

> Section 10(*l*), unlike § 10(j), is mandatory in nature: Whenever the Board develops 'reasonable cause' to believe that any one of the specified types of labor violations has occurred, it <u>must</u> petition the district court 'for appropriate injunctive relief. . .' Section 10(j), by contrast, is discretionary; it provides that 'the Board shall have power' to petition the district court for relief, but it does not say that the Board must do so.

*Miller ex rel. NLRB v. California Pac. Medical Ctr.*, 19 F.3d 449, 456-457 (9th Cir. 1994) (internal citation omitted; emphasis added).

When interpreting statutes, courts must generally presume that "a legislature says in a statute what it means and means in a statute what it says." *Thompson v. Greenwood*, 507 F.3d 416, 423 (6th Cir. 2007) (internal citation omitted). While the Court acknowledges that the role of the Respondents' General Counsel is certainly prosecutorial in a general sense, a plain reading of the unambiguous Section 10(*l*) language indicates that it is less than fully discretionary; where the Board

has reasonable cause to believe a charge is true and that a complaint should issue, they <u>shall</u> seek an injunction.  Therefore, once Section 10(*l*) is triggered, a nondiscretionary duty arises.  *See Miller*, 19 F.3d at 456-457.

### b.    Whether the Duty is Clear

As previously explained, it is not enough for a duty to be "nondiscretionary" in order to trigger mandamus jurisdiction in this Court; the duty must also be "clear."  *Heckler*, 466 U.S. at 617; *BP Care*, 398 F.3d at 515.  The Respondents argue that any duty owed is not clear because it is "disputed and subject to various interpretations of the NLRA and the First Amendment."  (Doc. 8 at 26).  Essentially, the Respondents assert that, because the area of law involved – a union's bannering and use of inflatable rats as a secondary boycott violation – is very murky and unsettled, any duty owed would not be "clear."  In support of this assertion, the Respondents cite to *Maczko v. Joyce*, 814 F.2d 308, 311 (6th Cir. 1987) ("when a duty is disputed or subject to various interpretations, for instance when unliquidated damages are involved, the duty is not 'owed' in that the obligation to do a particular act cannot be said to be clear. . .").

The Respondents' argument, however, mischaracterizes the issue.  The duty in dispute, and which must be "clear," is the Section 10(*l*) statutory duty to seek an injunction; the state of the law regarding the use of rat-and-banners is ancillary to that duty.  The Respondents are confusing the statutory duty to seek an injunction with the underlying merits of an NLRB complaint doing so.  The Court concludes that the Section 10(*l*) duty to seek an injunction is a clear duty whenever the official has reasonable cause to believe the charge is true and that a complaint should issue: the official need not be confident he or she can prove a Section 8 violation, only that there is *reasonable cause* to believe the charge asserting one is true and that a complaint should issue.  Section 10(*l*) specifically states, that under such circumstances, the official **<u>shall</u>** petition for an injunction. 29 U.S.C. §160(*l*).

-10-

Accordingly, a clear nondiscretionary duty exists under Section 10(*l*), which is potentially applicable here to afford the Court jurisdiction to issue a writ of mandamus.

### c.      When the Section 10(*l*) Duty is Triggered

Having determined that the statutory duty is both "nondiscretionary" and "clear," this Court turns to the third inquiry, when the Section 10(*l*) duty is triggered.   Under Section 10(*l*), the duty to seek an injunction is triggered when an official has "reasonable cause to believe such charge is true **and** that a complaint should issue." 29 U.S.C. §160(*l*) (emphasis added).  The Respondents argue that the word "and" means that, in order for there to be a nondiscretionary duty to seek an injunction, they must have <u>both</u> (1) reasonable cause to believe such charge is true <u>and</u> (2) reasonable cause to believe that a complaint should issue.  (Doc. 8 at 24).   In response, St. Elizabeth's essentially argues that mere reasonable cause to believe the charge is true is sufficient to trigger the duty.  (Doc. 9 at 4-5).

### i.      The Statute Must be Read Conjunctively

When courts conduct statutory construction, "'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167 (2001)); *see U.S. v. Menasche*, 348 U.S. 528, 538-539 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.'").  As noted above, moreover, the Court presumes in this context, as it does in others, that the legislature understood the meaning and import of the words it chose to express that meaning. *See Thompson*, 507 F.3d at 423; *cf. Miller ex rel. NLRB v. California Pac. Medical Ctr.*, 19 F.3d 449, 456-457 (9th Cir. 1994) ("As Congress prescribed a 'reasonable cause' prerequisite for requesting § 10(*l*) relief, it knew how to impose that kind of requirement when it wanted to.").

The word "and" generally connotes a conjunctive requirement.  *See Officemax, Inc. v. U.S.*, 428 F.3d 583, 589 (6th Cir. 2005) (citing *Crooks v. Harrelson*, 282 U.S. 55, 58 (1930) for the proposition that the word "'and' presumptively should be read in its 'ordinary' <u>conjunctive</u> sense . . ." (emphasis added)); *accord In re First Magnus Fin. Corp.*, 390 B.R. 667, 676-677 (Bankr. D. Ariz. 2008) ("Statutory phrases separated by the word 'and' are usually to be interpreted in the conjunctive." (internal citation omitted)).  Otherwise, the word and the clause that follows it would be rendered superfluous; Congress could simply have omitted the language following the word "true" and proceeding the phrase "he shall" if it intended it to have no meaning.  There is no reason to conclude that Congress did not similarly intend to impose a conjunctive (i.e., two-step) requirement upon the duty specified in Section 10(*l*).

Indeed, while no other court in this Circuit appears to have addressed this issue, at least one appellate court has, reaching the same conclusion reached here.  In *Terminal Freight Handling Co. v. Solien*, 444 F.2d 699, 708 (8th Cir. 1971), *cert. denied*, 405 U.S. 996 (1972), the plaintiff (1) filed a complaint for an injunction to compel the defendant, a Regional Director of the NLRB, to seek an injunction and (2) sought a declaratory judgment that the defendant's failure to seek such an injunction violated Section 10(*l*)'s "shall petition" mandate.  *Id.* at 702.  Because the defendant conceded that it had found reasonable cause that the plaintiff's charge was true, *Terminal Freight* turned on the effect of the "and that a complaint should issue" language.  The Eighth Circuit concluded that the phrase could not be rendered superfluous or disregarded, and that it reflected "Congress' intention that the regional director retain limited <u>prosecutorial discretion</u> [about whether and when to actually issue a complaint] once he has made a reasonable cause determination."  *Id.* at 708-09 (emphasis added).  Because the resources of government agencies are not unlimited and "many decisions rest on marginal facts, requiring an assessment of the overall situation and

-12-

background" before committing limited resources, the Eighth Circuit reasoned that "the Regional Director must possess some latitude on when, in his judgment, appropriate injunctive relief should be sought." *Id.*  The Eighth Circuit reasoned that while the prosecutorial discretion under the second prong of Section 10(*l*) is not broad – "the regional director [has a duty] to petition for injunctive relief if he is unable to secure cessation of the unlawful activity upon request or through summary negotiation, unless the matter presented is so unsubstantial as not to warrant further action" – it still exists and may not be excised from the statutory scheme.  *Id.*

Thus, *Terminal Freight* stands for the proposition that, the Section 10(*l*) nondiscretionary duty is not automatically triggered at the moment a determination is made that there is reasonable cause to believe a charge is true.  The second requirement must be given effect – allowing the NLRB officials the limited prosecutorial discretion to decide whether a complaint should issue before the statute requires them to seek an injunction.  *See id*; *cf. Olegario v. U.S.*, 629 F.2d 204, 216 (2d Cir. 1980) (citing *Terminal Freight* for proposition that "judicial and administrative officers are generally allowed wide discretion and considerable latitude in determining when to file cases or pursue appeals.").

While not binding on this Court, it is notable that the NLRB has itself addressed this issue, also concluding that Section 10(*l*)'s requirements are to be read in the conjunctive.  In *Service Employees, Local 73 (A-1 Security)*, 224 N.L.R.B. 434 (1976), the NLRB affirmed an Administrative Law Judge's order denying a motion for summary judgment in the face of an assertion that Section 10(*l*) imposes a "mandatory obligation to seek an injunction when the conditions enumerated in Sec. 8(b)(4) of the Act are present."  *Id.* at 441.  The respondent in that case, citing *Terminal Freight*, argued that the Regional Director's failure to seek an injunction was not only a breach of his Section 10(*l*) duty but also functioned as an admission "that he did not have

-13-

'reasonable cause to believe' that the charges before him were meritorious." *Id.* As St. Elizabeth's

does here, the respondent's argument in *A-1 Security* assumed that Section 10(*l*) was triggered by

the veracity of the claim; the respondent assumed that no discretion existed over the decision to issue

a complaint once there was reasonable cause to believe the complaint was true.  In response, the

General Counsel countered that,

> under Sec. 3(d) of the Act, the General Counsel, acting through the Regional
> Director, is vested with a wide range of discretion which relieves him of the
> obligation, in proper circumstances, of seeking injunctive relief when, in his
> judgment, there exists no danger of substantial or irreparable injury to flow from the
> present conduct of the charged party.

*Id.*  The ALJ agreed with the General Counsel's interpretation of Section 10(*l*), and the NLRB

affirmed, concluding that the "decision to seek a 10(*l*) injunction is a matter of administrative

discretion for the Regional Director."  *Id.* at 434.

While some courts appear to conflate the two Section 10(*l*) requirements, none do so in

contexts where the meaning of the second was at issue.  *See, e.g., Overstreet ex rel. NLRB v. United

Bhd. of Carpenters & Joiners of Am., Local 1506*, 409 F.3d 1199, 1205 (9th Cir. 2005) ("Board

officials must petition for a § 10(*l*) injunction whenever it has 'reasonable cause' to believe that

specific violations of the NLRA. . . have occurred."); *Muffley v. Spartan Mining Co.*, 570 F.3d 534,

542 (4th Cir. 2009) ("Section 10(*l*) is mandatory: upon a showing of reasonable cause that specific

types of unfair practices have occurred, the General Counsel must seek injunctive relief in the

district court."); *Pye v. Teamsters Local Union No. 122*, 61 F.3d 1013, 1019 n.7 (1st Cir. 1995)

("once the Regional Director has reasonable cause to believe that a Union's activity falls within the

proscription of section 10(*l*), she 'shall . . . petition . . . for appropriate injunctive relief . . .'").  In

none of these cases were courts deciding whether to issue a writ of mandamus to force Board

officials to seek an injunction.  Those courts, instead, were reviewing district court decisions

-14-

granting or denying injunctions already sought by NLRB officials.  The standard employed in those cases was materially different than that which must be employed here.  Courts determining whether an injunction should be granted *once sought* assess whether there was reasonable cause to believe the unfair practice occurred and whether issuing an injunction would be just and proper.  *See Miller*, 19 F.3d at 456.  That significant procedural difference distinguishes those cases, and renders their discussion of the Section 10(*l*) duty imposed on the Board dicta.

St. Elizabeth's proposed reading of Section 10(*l*) is not only at odds with the plain language of the statute, but comes dangerously close to allowing charging parties themselves to seek injunctive relief directly by doing no more than craft a "colorable claim" for relief.  The Congressional record relating to Section 10(*l*), however, reveals that the Senate rejected a statutory scheme which would deprive NLRB officials of discretion in this area, overwhelmingly rejecting the Ball Amendment which would have given charging parties the right to seek Section 10(*l*) injunctions directly.  *Terminal Freight*, 444 F.2d at 707 (citing 93 Cong. Rec. 4833-4847 (1947)).

Indeed, if the Court were to refuse to give effect to the second prong of the 10(*l*) requirement, charging parties could not only dictate whether an injunction was sought in a given case, but when it must be sought.  Thus, NLRB officials would be deprived of the discretion to pursue remediation in lieu of an injunction or, as it claims it does here, choose to conserve governmental resources while awaiting the outcome of already-filed and potentially controlling court cases.[6]

---

[6]While St. Elizabeth's vigorously contests whether the resolution of any already-pending rat-and-banner cases would govern its claims, the principle it urges is broad enough to cover even those circumstances where earlier-filed actions are unquestionably controlling.

For all these reasons, the Court finds that, before the Section 10(*l*) nondiscretionary duty to seek an injunction is triggered, the Respondents must have *both* (1) reasonable cause to believe the charge is true *and* (2) reasonable cause to believe that a complaint should issue.

### d.      Whether the Duty has been Triggered

Now that the Court has determined that there is a clear, nondiscretionary duty triggered when the Respondents have both reasonable cause to believe that St. Elizabeth's charge is true <u>and</u> that a complaint should issue, the Court must assess whether both triggering prongs have been satisfied. St. Elizabeth's argues that, when the Respondents concluded that its charge had "arguable merit," that conclusion was sufficient to indicate that the Respondents had reasonable cause to believe that the charge was true and that a complaint should issue.  (Doc. 9 at 3-4).  St. Elizabeth's, in fact, claims in its response brief that "[r]easonable cause of an 8(B)(4)(B) violation <u>indisputably</u> exists here."  (Doc. 9 at 3 (emphasis added)).  It is clear from the Respondents' briefing, however, that the existence of reasonable cause absolutely is in dispute.  The Respondents argue that the mere statement that a claim has arguable merit does not constitute a finding of reasonable cause as to either whether that claim is true or that a complaint should issue.  (Doc. 8 at 21-25).  Because this "arguable merit" allegation is the only one offered by St. Elizabeth's to show that Section 10(*l*)'s requirements are met, the Court must determine whether such a statement is sufficient to fulfill both prongs.

### i.      Prong One: Reasonable Cause to Believe the Charge is True

While there is no on-point case explaining the definition of reasonable cause for Section 10(*l*) purposes, other NLRA cases do provide guidance.  "Reasonable cause has been interpreted to mean that there must be a 'reasonable possibility' that the Board will sustain the unfair labor practice

-16-

charge." *Farkas v. Oil, Chem. & Atomic Workers Int'l Union*, 422 F. Supp. 836, 837 (S.D. Ohio 1976); *see Danielson on behalf of NLRB v. Bldg. & Constr. Trades Council*, 1975 U.S. Dist. LEXIS 12853, at *9-10 (S.D.N.Y. 1975) ("'reasonable cause to believe' has been defined . . . as meaning either that there is a reasonable possibility that the Board will sustain the unfair labor practice charge, . . . [internal citation omitted] or that there is 'at least some significant possibility that the Board will enter an enforceable order…'" (citing *Danielson v. Joint Bd. of Coat, Suit and Allied Garment Workers' Union, ILGWU*, 494 F.2d 1230, 1244-45 (2d Cir. 1974))).  The definition articulated in those cases reiterates that reasonable cause is a low standard – i.e., merely that there is a reasonable possibility the Board would sustain the charge.

It is true that the Respondents never used the words "reasonable cause" when describing St. Elizabeth's charge, but use of those "magic words" is unnecessary.  Courts do not generally require that particular magic words be used because it is the <u>substance</u> of statements that is paramount.  *See, e.g., Sterling v. Velsicol Chem. Corp.*, 1988 U.S. App. LEXIS 6957, at *83 (6th Cir. 1988) (citing *Thompson v. Underwood*, 407 F.2d 994, 997 (6th Cir. 1969) ("Obviously, a court should not disregard the substance of a doctor's testimony merely because he fails to use the magic words 'reasonable medical certainty.'")); *cf. Ferguson v. Sec'y for the Dep't of Corr.*, 580 F.3d 1183, 1213 (11th Cir. 2009) ("Though 'magic words are not needed to make a proper objection,' counsel must articulate his concern with sufficient specificity 'to inform the trial judge of the alleged error.'" (internal citation omitted)).

The Court concludes that the Respondents' statement that St. Elizabeth's claim was arguably meritorious is sufficient to show that the Respondents had reasonable cause to believe that St. Elizabeth's charge was true.  All that is required is that the Respondents thought there was a reasonable <u>possibility</u> that the Board would sustain the charge.  *Farkas*, 422 F. Supp. at 837.  The

-17-

Respondents' decision to keep the case and to classify it as one with arguable merit implicitly satisfies that low reasonable cause threshold.  If the Respondents thought that St. Elizabeth's claim had enough merit that it could be plausibly argued,[7] then they must have thought that there was at least a reasonable possibility that the Board would sustain the charge.  Otherwise, they would have certainly dismissed St. Elizabeth's case as lacking arguable merit.  Therefore, the Court concludes, at this motion to dismiss stage, that St. Elizabeth's has pled a facially plausible claim that the Respondents had reasonable cause to believe its charge was true.  Accordingly, prong one of Section 10(*l*) is satisfied.

### ii.      Prong Two: That a Complaint Should Issue

While the Respondents' statement that St. Elizabeth's charge has arguable merit satisfies the first prong, in order for the Section 10(*l*) nondiscretionary duty to be triggered, the Respondents must have also decided "that a complaint should issue."  29 U.S.C. §160(*l*).  The Respondents' arguable merit determination by itself does not necessarily meet that second requirement.  As explained above, deciding whether a complaint should issue is a separate matter of discretion, which depends on the Respondents' assessment of other practical factors, including available resources and the substantiality of the claim.  *See Terminal Freight*, 444 F.2d at 708.

Taking all of St. Elizabeth's allegations as true and resolving every doubt in its favor, as the Court is required to do pursuant to Rule 12(b)(6), it is clear that the Respondents simply never made the discretionary decision that a complaint should issue.  In fact, the Respondents reached the opposite conclusion – that a complaint should not be issued at this time, pending the outcome of the

---

[7]The dictionary definition of "arguable" is a position "that can be plausibly or convincingly argued."  Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/arguable (last visited Feb. 26, 2010).

lead rat-and-banner cases. (Doc. 1-3 & 1-4).  The Respondents concluded that, for practical purposes, limited resources should not be used litigating St. Elizabeth's case at this time because the matter depended, or at least potentially depended, upon the outcome of other currently pending rat-and-banner cases.  The Respondents clearly determined that St. Elizabeth's case should be "held in abeyance" and that a complaint should **not** be issued at this time.  (Doc. 1-5).[8]  Therefore, the second prong has not been satisfied, and the nondiscretionary duty imposed by Section 10(*l*) has not been triggered.  Accordingly, this Court lacks jurisdiction to issue a writ of mandamus and St. Elizabeth's has failed to state a plausible claim for relief.

### e.        Whether the Respondents' Decision was an Abuse of Discretion

As discussed above, the Court has concluded that the Respondents did not make the discretionary choice that a complaint should issue, and that its Section 10(*l*) nondiscretionary duty has not been triggered.  St. Elizabeth's asserts, however, that, even assuming that conclusion, the Respondents' decision that a complaint should not issue was so flawed that it was arbitrary and an abuse of prosecutorial discretion, citing among other cases, *Leedom v. Kyne*, 358 U.S. 184 (1958).[9]

---

[8]As discussed below, St. Elizabeth's argues that the Respondents' explanation of why they made the decision that a charge should not issue is faulty.  St. Elizabeth's argues that its case is distinguishable from the cases to which the Respondents claim to have deferred, or whose outcomes the Respondents say presaged a less than positive in-court outcome here.  St. Elizabeth's does not dispute, however, that, rightly or wrongly, the Respondents made a conscious decision to not act on the charge.

[9]The assertion that the Respondents' decision was arbitrary and an abuse of discretion was not raised in St. Elizabeth's Petition (Doc. 1).  Because the Respondents raise no objection to the argument, however, and fully address the issue in their reply brief, the Court addresses it as well.  (Doc. 12 at 8 n.7).

St. Elizabeth's argues that the Respondents abused their discretion by creating a blanket restriction on any new rat-and-banner cases and improperly treating all such cases with the same "broad brush." (Doc. 9 at 5-6).  Specifically, St. Elizabeth's asserts that its charge is materially distinguishable from all other rat-and-banner cases because St. Elizabeth's is not and never has been an employer of Local 33 members or potential members and St. Elizabeth's does not do business with THCC, the entity Local 33 sought to unionize.  St. Elizabeth's asserts, moreover, that the Board's expressed concern regarding the outcomes in court cases refusing to prohibit rat-and-banner activity on First Amendment grounds is misplaced because those cases involved prior restraints and this one does not.  While these distinctions may undercut the wisdom of the Respondents' conclusion that a complaint should not issue against Local 33 at this time, however, they do not change the fact that the decision was made, or that Board personnel had a right to make that decision, even erroneously.

The Supreme Court in *Leedom* did recognize that federal courts in certain limited circumstances have jurisdiction to review agency actions "taken in excess of delegated powers." *Id.* at 190.  This is a very narrow exception, however, to the general rule that the NLRA "precludes District Court review of the manner in which the General Counsel of the Board investigates unfair labor practice charges and determines whether to issue a complaint thereon." *Mayer v. Ordman*, 391 F.2d 889 (6th Cir. 1968); *Am. Metal Prod. Co. v. Reynolds*, 332 F.2d 434, 435 (6th Cir. 1964) ("the ruling in *Leedom* . . . is an exception to the general rule that the District Court has no jurisdiction to review or to enjoin orders or proceedings of the Board.").  In order for this narrow exception to apply, the Respondents' decision must have been "made in excess of its delegated powers and contrary to a specific prohibition in the Act."  *Am. Metal*, 332 F.2d at 435; *see also Assoc. Builders & Contractors, Inc. etc. v. Irving*, 610 F.2d 1221, 1227 (4th Cir. 1979) (In *Leedom*, the reviewed agency decision was made "in violation of the positive command of a statute.").

-20-

St. Elizabeth's argues that because the Respondents' decision that a complaint should not issue was wrong, it was necessarily in excess of its delegated authority and violated a mandatory command of NLRA Section 10(*l*).  (Doc. 9 at 5-7).  This assertion skips several critical steps in the Court's inquiry, however.  As noted above, the mandatory duty under Section 10(*l*) is not triggered until the decision is made that a complaint should issue.  The decision St. Elizabeth's asks this Court to second-guess is not governed by a positive command of the NLRA, but, rather, is a discretionary decision which the "General Counsel has a wide discretion in determining" and "there is no judicial review where agency action is committed by law to agency discretion."  *Mayer*, 391 F.2d at 891-92 (internal quotation omitted; emphasis added).  Therefore, the Respondents' assessment that a complaint should not issue is within the discretion committed to them by law, and that exercise of discretion here was not contrary to any specific prohibition in the NLRA.  Finding that the decision was not made in excess of the Respondents' delegated powers, the Court lacks jurisdiction to review it, even if, as St. Elizabeth's argues, there may be legitimate grounds to debate it.  Accordingly, whatever claim St. Elizabeth's may assert for abuse of discretion must be dismissed.

## III.   **CONCLUSION**

St. Elizabeth's understandably is frustrated by Local 33's rat-and-banner attack on it and its employee, and by the Respondents' refusal to act on its complaints regarding that activity.  Mandamus is an extraordinary remedy, however, and the Court's jurisdiction to consider mandamus petitions is narrowly drawn.  For the reasons articulated above, the Court finds that St. Elizabeth's has failed to articulate a viable claim for relief under Section 10(*l*) against the Respondents and that the Court, accordingly, lacks jurisdiction to entertain St. Elizabeth's Petition for a Writ of Mandamus.  Accordingly, the Respondents' Motion to Dismiss (Doc. 7) St. Elizabeth's Petition for

a Writ of Mandamus (Doc. 1), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6),

is **GRANTED**.

     **IT IS SO ORDERED.**

                                      **s/Kathleen M. O'Malley**
                                      **KATHLEEN McDONALD O'MALLEY**
                                      **UNITED STATES DISTRICT JUDGE**

**Dated: March 3, 2010**